Howard T. Hogan, J.
In this proceeding in eminent domain the County of Nassau has vested title on January 5, 1966 to several parcels of land fronting on Merrick Road in the Incorporated Village of Lynbrook for the purposes of realigning Merrick Road. The court has, in a prior decision in this proceeding, commented upon this mercantile area known as the “ five corners
The case at bar concerns several parcels all of which were owned by the Meadowbrook National Bank now National Bank of North America. On the date of vesting, the county has taken not only the front footage located within the new right of way but also excess lands. The entire parcel contains frontage on three streets: Merrick Road on the North, Atlantic Avenue on the West and Washington Avenue on the East.
This property owned by the claimant is composed of several different lots which are improved in varying manners. It is of ¿ssistance to outline the several parcels and set forth their square footage and the nature of their improvements:
Total Area in Area
Parcel Square Feet Taken Improvements
23-23X............... 3,728 All 3-story brick commercial bldg-
24r-24X............... 4,383 All 1-story stone bank building.
25-25X............... 2,997 All 1-story brick and stone bank
addition.
26 Inc. Tax Lot 23..... 11,903 2,979 2-story drive-in banking struc-
ture and paving.
27 Inc. Tax Lot 1...... 12,249 3,277 Asphalt paving.
In addition, not physically taken but in common ownership:
Tax Lot 325........... 660 0 Unimproved
20........... 2,020 0 1-story commercial building
3-story commercial building.
These parcels have been purchased by the bank over a period of years; damage parcel 26 in 1953, parcel 27 in 1957, 25 and 25X *173 in 1959, 23 and 23X in 1964. Tax lot 20 was purchased in December of 1965, one month prior to vesting for $46,000.
The appraiser for the bank envisaged the demolition of all improvements on this site and the erection of a new modern bank building on the entire parcel as it existed prior to the taking. In this regard, he produced a set of blueprints which had been prepared for the bank in 1964 showing such improvements.
With respect to valuation, he submitted a list of 12 comparable sales and relied primarily upon a series of purchases by First National City Bank of assembled parcels of land upon which it constructed a new bank facility in the Incorporated Village of Bockville Centre. He found an indicated value per square foot of $16 for the subject parcel but did not adopt any value for the improvements on the subject parcels as they required demolition in light of his highest and best use.
The appraiser for the petitioner approached the problem by calculating “ appraisal ” square footage and ascribing a unit value per appraisal square foot. This connotes the consideration of appraisal factors concerning the utility of the subject property. He applied increments to the actual square footage for such benefits as plottage, corner frontage, triple street frontage, key influence and .conjunctive use and the Davies rule-of-depth factor. To the resultant total of appraisal square feet, he applied a unit land value of $7.50 per appraisal square foot for commercial usage.
The bank building and auto teller were analyzed on a summation approach while the commercial building on parcel 23 was valued under a capitalization approach. Tax lot 325 was valued as vacant land and tax lot 20, the commercial structure purchased one month prior to vesting, was valued at its actual purchase price, $46,000 both before and after the taking on the theory that its purchase so close to vesting would establish the before value and that the parcel’s utility was not impaired by the taking of the contiguous parcels.
The remainder of the entire parcel consists of two tax lots formerly used for parking and containing 17,896 square feet. This remainder was analyzed by petitioner’s appraiser at $3.50 after adjusting for the Davies formula and for corner increment, key increment and plottage, to arrive at a total appraisal area of 21,096 square feet. Tax lot 325 was valued at $1,035.
The valuations set forth by the respective appraisers may be summarized as follows:
*174 Claimant:
Before: Land
38,010 sq. ft. @ $16..................................... $608,160
Bank building sound value................................. 232,300
Vault.................................................... 21,930
$862,390
After: Land
D.P. 26 & 27
17,364 sq. ft. @ $6...................................... $104,184
Tax Lots 20 & 325
2,750 sq. ft. @ $2.50..................................... 6,875
Improvements
Commercial structure Lot 20 ........................... 21,730
$132,789
The damage of $629,601 he apportions between direct $576,054 and severance at $132,789.
Petitioner:
Land before:
D.P. 23-23X
5,028 appraisal sq. ft. @ $7.50. D.P. 24r-24X, 25-25X, Lot 325 9,568 appraisal sq. ft. @ $7.50. D.P. 26-27, Lots 23 & 1 31,898 appraisal sq. ft. @ $3.50
Improvements:
D.P. 23-23X Commercial building. D.P. 24r-24X
25-25X 26, 27 Lots 325, 23 and 1
Bank and parking lot.
$37,700
71,750
111,500
$220,950
20,300
115,300
Subtotal before: $356,550 Lot 20 46,000
Total before: $402,550
After:
Remainder Lots 1 & 23
21,096 appraisal sq. ft. at $3.50................................... 73,836
Lot 325
138 appraisal sq. ft. at $7.50..................................... 1,035
74,871
Rounded to: $75,000
Lot 20......................................................... 46,000
$121,000
The total damage he therefore calculated to be $281,550, of which $13,550 represents severance damage.
The court finds that the approach utilized by petitioner’s appraiser is the more desirable in this case. While the claimant’s appraiser did submit the proposed plans for a new building, there is no evidence that anything was accomplished to further the plan, nor that any lack of accomplishment was due solely to the condemnation. The mere fact that the entire com *175 plex of properties herein was in common ownership at the time of vesting does not mandate their valuation as a unit. (Nichols, Eminent Domain [3d ed.], § 1431 et seq. See, also, this court’s decision in the Matter of County of Nassau [Massapequa-Woodbury Rd.], Sept. 30,1968.)
However, it is quite clear that “it is competent to show the general character of the business to which the property is adaptable, since property desirable or available for business of a certain character commands higher prices than property only suitable for business of another character ” (19 N. Y. Jur., Eminent Domain, pp. 381-382, and cases cited therein).
The facts in this case clearly demonstrate that property suited for a bank site is more desirable than other commercial property without such potential. Applying the stated principles to the facts in this case, the court will value parcels 24-24X, 25-25X, 26 and 27 on the summation basis utilized by both appraisers, and- parcel 23 and 23X under the capitalization approach of petitioner’s expert.
The county contends in its posttrial memorandum of law that the bank building should not be valued as a specialty in light of the court’s application of a capitalization approach in the valuation of another bank building in this proceeding (see parcel 17 and 17X herein, N. Y. L. J., Aug. 16, 1968, p. 10, col. 3). In that case, however, the building had been adopted for use as a hardware store and so used for over 30 years. Any special use for that structure had long since terminated, its value was as a commercial building, and there was substantial proof of its value as a commercial structure.
It is difficult to accurately compare the conclusions of the appraisers without placing them upon a common ground. Petitioner’s approach multiplied the number of appraisal square feet by the value discerned from his comparable sales of $7.50 per appraisal square foot.
Dividing the actual square feet of the different parcels into the petitioner’s total valuation for each results in a value per actual foot of the several parcels. The court has done this in the following table:
Value Before:
Estimated
Parcel Value
23- 23X $37,700
24- 24X1
25- 25X \ 71,750
Lot 325 j
26- 27 1 111,500
Lot 23 & 1 /
Total Actual Square Feet
3,728
8,040
24,152
Value per Appraisal Square Feet
$7.50
7.50
3.50
Value per Actual Square Feet
$10.11
8.92
4.62
*176 Value After:
Lot 325 1,035 660 7.50 1.57
Lots 1& 23 73,836 17,896 3.50 4.13
The range of values, then, for the actual square footage involved before the taking is from $4.62 for the parking lot area to $8.92 for the parcels utilized as a bank, to $10.11 for the corner commercial structure.
The series of claimant’s comparable sales of land utilized in the assembly of a new site for a bank in Rockville Centre are of prime importance. Petitioner’s expert included one of these, his sale 22, as the only sale involving a banking institution. This common sale, claimant’s number 2 and petitioner’s number 22, reflected a value of $10.21 per actual square foot in February, 1964, and the petitioner’s expert interpreted this value as $9.85 per appraisal square foot for an interior parcel. In fact that comparable parcel was directly benefited by frontage on a new municipal parking lot and the entrance road to the parking area. The remainder of claimant’s comparable sales in the Rockville Centre assemblage range to $16.66 in claimant’s sale No. 9.
The court adopts petitioner’s approach of attributing increments to the subject properties to arrive at appraisal square feet, and finds that petitioner’s increments are accurate throughout. Ultimate findings however will be made in terms of value per actual square foot as petitioner’s appraiser has done in his analysis of severance damage. Moreover, the court does not accept the basic value of $7.50 per appraisal square foot.
The common comparable at $10.21 per actual square foot is of prime importance, and the remainder of the Rockville Centre sales indicates the range of prices which must be paid to assemble a bank site within the commercial confines of an incorporated village. Analyzing the common sale in light of claimant’s sales, and their range up to $16.66, the court finds that sale No. 2 must be adjusted upward by 30 cents per square foot for an indicated land value of $10.50 per appraisal square foot for the subject property. The testimony of claimant’s expert concerning the relative desirability of the subject parcels and the Rock-ville Centre properties is somewhat confused, but the unique desirability of the “ five corners ” vicinity is well established, particularly for a parcel with ample on-site parking.
The commercial building on lot 23 and 23X, however, will be valued by petitioner’s over-all capitalization approach, which led to a choice of value for the property of $58,000 for both land and building. The County Attorney has objected to this court’s decision in parcel 20 and 20X of this proceeding concerning the court’s apportionment between land and building of an award *177 made on the basis of an over-all capitalization approach, and the value found herein will accordingly not be apportioned. (Matter of County of Nassau [Merrick Rd.], N. Y. L. J., June 12, 1967, p. 21, col. 1 [Sup. Ct., Nassau County]; N. Y. L. J., Oct. 30, 1967, p. 22, col. 4.)
It should be observed, however, that applying the land value of $10.50 found by the court to the 5,028 appraisal square feet proffered by petitioner’s appraiser, the result is $52,794, which, when compared with the economic valuation of $58,000, would tend to support the feasibility of the eventual demolition of the existing structure for replacement with a new banking facility.
The utility of lot 20 is not, in the court’s opinion, diminished by the taking of the adjacent parcels. It was purchased one month prior to vesting for $46,000, which, absent convincing proof to the contrary, established its value before the taking. It lost neither frontage nor access as a result of the taking, and while it is no longer available for part of a potential bank site, its value as a commercial structure is separate and apart from any such use. Presumably, the bank as a knowledgeable purchaser, would pay only the fair market value for the property.
The court adopts petitioner’s valuation of the bank structure and other improvements and finds its expert more accurate with his depreciation factor of 53% for the 50-year-old structure than was claimant’s 10%. The remaining parcels to be considered consist of the property presently used for banking purposes and for parking. Applying the court’s value of $10.50 per appraisal square foot to the petitioner’s appraisal area of 9,568 square feet, the value of these parcels is found to be $100,464. This reflects a value per actual square foot of $12.50.
Applying the $12.50 value to the 660 square feet comprising lot 325, the value for lot 325 as part of the bank complex is found to be $8,250 prior to the taking. The value after is found by the court to be $1.50 per actual square foot for 660 square feet, as was established upon the trial.
The petitioner valued D.P. 26 and 27 merely as part of the parking area. The court does not agree with such treatment, since these two parcels combined to give 180.76 feet of frontage on Merrick Road, and damage parcel 26 was in fact improved with a drive-in teller’s window, an indispensable amenity for a suburban bank. The court values these two parcels at $12.50 per actual square foot, or $37,238 for damage parcel 26 of 2,979 square feet and $40,963 for damage parcel 27 containing 3,277 square feet.
The court adopts the indicated parking lot value of $4.62 per actual square foot before the taking and $4.13 after. The values *178 for lots 23 and 1, with their combined 17,896 square feet, are accordingly $82,679 before and $73,910 following the taking.
Based upon the testimony, the exhibits, the appraisers and the court having viewed the property, the court finds and awards as follows:
Value Before:
D.P. 23-23X Land and building............................... $58,000
D.P. 24r-24X 1
25-25X 1 8,040 sq. ft. of land @ $12.50..................... 100,500
Lot 325 J
D.P. 26 2,979 sq. ft. of land @ $12.50 ..................... 37,238
D.P. 27 3,277 sq. ft. of land © $12.50..................... 40,963
Tax Lots 23 and 1
17,896 sq. ft. of land @ $4.62................................ 82,679
Improvements — all........................................... 115,300
Lot 20 — Land and building................................... 46,000
$480,680
Value After:
Lots 1 and 23
17,896 sq. ft. © $4.13....................................... $73,910
Lot 325
660 sq. ft. @ $1.50.......................................... 990
Lot 20....................................................... 46,000
$120,900
The difference, or damage of $359,780, is apportioned as follows:
Direct D.P. 23-23X
Land and building.......................................... 58,000.00
D.P. 24r-24X
4,383 sq. ft. @ $12.50....................................... 54,787.50
D.P. 25-25X
2,997 sq. ft. @ $12.50....................................... 37,462.50
D.P. 26
2,979 sq. ft. © $12.50....................................... 37,238.00
D.P. 27
3,277 sq. ft. © $12.50....................................... 40,963.00
Improvements................................................ 115,300.00
Total Direct Damage: $343,751.00
Severance Lot 325
660 sq. ft. © $11.00......................................... 7,260.00
Lot 23 and 1
17,896 sq. ft. @ 49 cents.................................... 8,769.00
16,029.00